**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X
In re:                                                                    **FOR PUBLICATION**

AMERICAN EQUITIES GROUP, INC., *et al.*,          Chapter 11
                                                                          No. 00-15487 (BRL)
                                                                          (Jointly Administered)
                      Debtors.
----------------------------------------------------------------X

THE AEG LIQUIDATION TRUST on behalf of
American Equities Group, Inc.,

                      Plaintiff,                     Adv. Pro. No. 11-02489 (BRL)

       v.

TOOBRO NY LLC, TOOBRO DAG LLC, FJB,
LLC, AHAVA FOOD CORP. d/b/a NORTH
COUNTRY CHEESE CORP., LEWIS COUNTY
DAIRY CORP., ST. LAWRENCE FOOD CORP.,
SCHWARTZ & SONS QUALITY
DISTRIBUTORS, INC., AHAVA OF
CALIFORNIA d/b/a BEST VALUE KOSHER
FOOD and d/b/a AHAVA NATIONAL FOOD
DISTRIBUTOR and d/b/a NORTH COUNTRY
MANUFACTURNG, RTB SPECIALTY FOOD,
LLC, YOMO QUALITY FOOD LLC d/b/a BEST
VALUE KOSHER FOOD, MSBRO, LLC,
AHAVA DAIRY PRODUCTS CORP., and
SIGNATURE BANK,

                      Defendants.
----------------------------------------------------------------X
APPEARANCES**:**

DICKSTEIN SHAPIRO LLP
1633 Broadway
New York, New York 10019
Telephone:   (212) 277-6500
Facsimile:   (212) 277-6501
<u>By</u>:   Shaya M. Berger

*Attorneys for Plaintiff*

HERRICK, FEINSTEIN LLP
2 Park Avenue
The Chrysler Building
New York, New York 10016
Telephone:   (212) 592-1400
Facsimile:   (212) 592-1500
By:    Gary F. Eisenberg
       Joshua J. Angel
       Mara. B. Levin

*Attorneys for Defendant Signature Bank*


Before: Hon. Burton R. Lifland
         United States Bankruptcy Judge

**MEMORANDUM DECISION AND ORDER REMANDING ADVERSARY
PROCEEDING TO STATE COURT**

This is a confirmed chapter 11 plan with a liquidation trust created therein. American Equities Group, Inc. ("AEG") had its Chapter 11 plan confirmed on October 20, 2008,[1] and closed on January 29, 2009.[2] The AEG liquidation trust (the "Liquidation Trust"), as plaintiff, brought suit in the New York State Supreme Court (the "State Court") against a host of defendants[3] based on a variety of activities, many occurring subsequent to the AEG bankruptcy (the "State Court Action"). Litigation in the State Court is relatively matured and has been the subject of a recent and reasoned decision of that court (Kornreich, J.).[4] In parsing motions to

---

[1] *See* Order Confirming Debtors' Second Amended Plan of Liquidation [hereinafter the "Confirmation Order"], Case No. 00-15487, Dkt. No. 973.

[2] *See* Order Granting Application for Final Decree [hereinafter the "Final Decree"], Case No. 00-15487, Dkt. No. 985.

[3] Specifically, the defendants were: the Toobro Entities, which are Toobro NY LLC, Toobro DAG LLC and FJB LLC; the Ahava Entities which are Ahava Food Corp. ("Ahava Food"), Lewis County Dairy Corp. ("Lewis Dairy"), St. Lawrence Food Corp. ("St. Lawrence"), Shwartz & Sons Quality Distributors, Inc., Ahava of California, LLC ("Ahava California"), RTB Specialty Food, LLC, Yomo Quality Food LLC and Ahava Dairy Products Corp. ("Ahava Dairy"); and MSBRO LLC (collectively, the "Defendants").

[4] Justice Kornreich's decision (the "Motion to Dismiss Decision") is attached as Exhibit H to the Declaration of Joshua J. Angel. *See* Declaration of Joshua J. Angel [hereinafter "Angel Decl."], (Adv. Pro. No. 11-02489, Dkt. No. 24), Ex. H.

dismiss brought by many of the State Court defendants, Justice Kornreich found that Signature Bank ("Signature") was a necessary party. Almost immediately thereafter, Signature removed the State Court Action to this Court as the instant adversary proceeding (the "Adversary Proceeding").

This Adversary Proceeding is only one of the many arising from AEG's secured party relationship with a number of the Defendants, the latest of which is Signature Bank. The original causes of action from which the current proceeding derives have been subject to various settlements, judgments and enforcement proceedings in several courts, including withdrawal by the United States District Court for the Southern District of New York (the "District Court") and proceedings in a bankruptcy court in California. In this Adversary Proceeding, the Liquidation Trust seeks relief based on state-law causes of action, such as breach of contract, breach of settlement agreement, alter ego liability, successor liability, conversion and unjust enrichment.

On October 27, 2011, an Order to Show Cause was entered by this Court why it should not remand the Adversary Proceeding to the State Court. Signature, the only party to submit a response, opposes remand to the State Court. As the parties do not dispute whether this Court has subject matter jurisdiction, the only issue outstanding is whether the Adversary Proceeding should be remanded. This Court answers in the affirmative, finding that adjudication of the Adversary Proceeding is more appropriate for the State Court. <u>First</u>, as the AEG bankruptcy has been closed—indeed, the plaintiff in the instant proceeding, the Liquidation Trust, is a creation of AEG's confirmed Chapter 11 plan, the outcome of the Adversary Proceeding could not impact the administration of the bankruptcy estate in any meaningful way. <u>Second</u>, the action underlying the Adversary Proceeding has been pending in State Court for over a year and that court has adjudicated several matters, including a motion to dismiss for which the State Court

issued an extensive decision.  Third, state law issues predominate, including relatively unsettled areas of state law.  Finally, the case has a strong New York nexus, resulting in New York's compelling interest to adjudicate the action.  In light of the aforementioned considerations, this Court hereby EQUITABLY REMANDS the Adversary Proceeding to the State Court.

## BACKGROUND

The Adversary Proceeding originated as a lawsuit filed by the Liquidation Trust in 2010 in the State Court, but in reality, is based on a prolonged and convoluted history of litigation. The following facts, unless noted otherwise, are taken from the complaint filed in this Adversary Proceeding.  *See* Copy of Certified Order Transferring Case, Dkt. No. 1, Ex. D [hereinafter the "Complaint"].

### The Agreement Between AEG and Ahava Dairy

In 2000, AEG filed for bankruptcy in this Court, and in 2001, initiated an adversary proceeding (the "2001 Adversary Proceeding") against Ahava Dairy, Lewis Dairy, Ahava Food and M. Banayan[5] (the "SDNY Defendants") for failure to pay $8,081,819.30 pursuant to an account receivable factoring agreement (the "Agreement") entered between AEG and Ahava Dairy in 1996.  Moise Banayan a/k/a Moshe Banayan ("M. Banayan"), the sole owner of Ahava Dairy, and Lewis Dairy personally guaranteed all of Ahava Dairy's obligations under the Agreement, and Ahava Dairy and Lewis Dairy each granted AEG a first priority security interest in all of their respective assets to secure their obligations under the Agreement.  AEG perfected its liens by filing Uniform Commercial Code ("UCC") financial statements on November 13, 1996.

---

[5] AEG subsequently added Ahava Food, alleging it was an alter ego of Ahava Dairy.

The Liquidation Trust contends that as early as 2000, M. Banayan instigated sham transfers of assets between the Ahava Entities in an effort to escape liability under the Agreement. *See* Compl., ¶¶ 62-71, 74. Specifically, over the course of several years, St. Lawrence received assets of the SDNY Defendants, and in 2007, M. Banayan transferred the business operations of the SDNY Defendants and St. Lawrence to Ahava California. Compl., ¶¶ 63-66. In a further attempt to escape liability, in November 2008, M. Banayan attempted to sell the assets of Ahava California free and clear of all liens and encumbrances as part of Ahava California's bankruptcy case in California. The bankruptcy court denied the motion and dismissed the bankruptcy case as a "bad faith filing." Compl., ¶¶ 75-78.

**The Settlement Agreement**

On September 27, 2001, the District Court withdrew the reference with respect to the 2001 Adversary Proceeding. In 2008, AEG and the SDNY Defendants entered into a settlement agreement (the "Settlement Agreement"), whereby (1) a judgment for $3.5 million would be entered, jointly and severally, against Ahava Dairy, Lewis Dairy, and M. Banayan; (2) a judgment of $325,000 would be entered against Ahava Food; (3) Ahava Dairy, Lewis Dairy, and M. Banayan, jointly and severally, would pay $250,000 to AEG in ten monthly installments; and (4) if the monthly installments were not paid, a judgment of $3.5 million would be entered against Ahava Food. *See* Compl., ¶ 41. Pursuant to the Settlement, the District Court entered a final money judgment and order of dismissal with prejudice. The Settlement Agreement was breached almost immediately, and the District Court entered a final money judgment against Ahava Food for $3.5 million. Compl., ¶¶ 43-45. Thus, the District Court litigation ended.

**The Liquidation Trust's Dispute with Signature**

In 2002, UCC-3 termination statements (the "Termination Statements") were filed

purporting to terminate AEG's security interest in the assets of Ahava Dairy and Lewis Dairy. The Termination Statements indicated that they were filed by Ahava Dairy and Lewis Dairy, *not* by AEG, the secured party and the only party authorized to file such a statement. Compl., ¶¶ 48-49. AEG did not discover the Terminating Statements until 2006, *at which time it filed UCC correction statements*. Compl., ¶¶ 50-51.

In 2005, Signature became a secured creditor of many of the Ahava Entities, including Lewis Dairy. Compl., ¶¶ 53, 85. In 2008, after default and judgment against these entities, Signature sought to conduct a secured sale (the "Secured Sale") of their assets (the "Secured Sale Assets"). AEG objected, noting that any action taken by Signature that "would infringe upon or purport to affect, negate or modify AEG's interest in the subject collateral would constitute a breach of the automatic stay of Section 362 of the Bankruptcy Code." Angel Decl., Ex. A. Signature moved by order to show cause for relief from the automatic stay in this Court. By order dated July 8, 2008, this Court granted a limited form of relief,[6] permitting Signature to conduct the Secured Sale, but noting:

> all liens of Signature and AEG shall attach to the proceeds of the Sale (subject to prior security interests, if any, of any third party), and the proceeds of the Sale shall be held in escrow pending further adjudication of this Court with respect to competing claims of priority as to the proceeds of the Sale.

Order Granting Limited Relief From Automatic Stay [hereinafter the "Lift Stay Order"] (Case No. 00-15487, Dkt. No. 932). On January 29, 2009, this Court granted AEG's application for entry of a final decree, stating "that this Court shall retain jurisdiction over any disputes arising out of this Court's Order Granting [Signature] Limited Relief from the Automatic Stay." *See* The Final Decree, p. 1.

---

[6] The undersigned not being available, another judge in this Court entertained and signed the order granting limited relief.

6

At the Secured Sale, a wholly owned subsidiary of Signature purchased the Secured Sale Assets, which it later sold to Toobro NY. MSBRO also claims to be part owner of the Secured Sale Assets. Compl., ¶¶ 97-98.

**The Claims Purchase Agreement**

On February 18, 2009, the Liquidation Trust and Toobro NY executed an agreement (the "Claims Purchase Agreement") in which Toobro NY agreed to purchase the Trust's claims and liens against the Ahava Entities. Compl., ¶ 104. Pursuant to the agreement, Toobro NY was required to make certain payments. Failure to do so would result in the agreement being void *ab initio*. Compl., ¶ 105. Toobro NY failed to make such payments. Compl., ¶¶ 106-08.

**The State Court Action**

On June 21, 2010, the Liquidation Trust filed the State Court Action seeking to recover payments pursuant to the Agreement, the Settlement Agreement and the Claims Purchase Agreement based on various theories of liability, including breach of contract, alter ego liability, express and implied successor liability and de facto merger. Compl., ¶ 110. The Liquidation Trust also sought a declaratory judgment that it maintains uninterrupted first priority security interests in Ahava Dairy's and Lewis Dairy's assets despite a series of transfers to other entities and the filing of the Termination Statements.

In the Motion to Dismiss Decision, the State Court denied in part and granted in part motions to dismiss the state court action. Therein, the State Court determined that Signature Bank was a necessary party that must be joined. Upon being served, Signature removed the State Court Action to the District Court who referred it to this Court as this Adversary Proceeding, wherein the Litigation Trust seeks the same relief that it sought in the State Court

Action, as well as punitive damages of $5 million, and based on theories of conversion and unjust enrichment, the proceeds of the Secured Sale.

## ANALYSIS

Section 1452(b) of title 28 allows a court to remand "on any equitable ground" a claim or cause of action that has been removed to that court. 28 U.S.C § 1452(b). A court may remand *sua sponte* "notwithstanding the absence of a motion . . . by any party." *Little Rest Twelve, Inc. v. Visan*, No. 11-CIV-2306, 2011 WL 3055375, at *12 (S.D.N.Y. July 20, 2011); *see First Fed. Sav. and Loan Ass'n v. Drake (In re Ramada Inn-Paragould Gen. P'ship)*, 137 B.R. 31, 33 (Bankr. E.D. Ark. 1992) ("[T]his Court may, upon its own motion remand the matter to the state court."). In determining whether remand is appropriate, courts in this District apply the factors laid out in *Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co. (In re Drexel Burnham Lambert Group, Inc.)*, 130 B.R. 405 (S.D.N.Y. 1991); s*ee, e.g.*, *CCM Pathfinder Pompano Bay, LLC v. Compass Fin. Partners LLC*, 396 B.R. 602, 607 (S.D.N.Y. 2008) (quoting *Drexel* for "the factors that courts consider when determining whether to exercise permissive abstention"). Those factors include:

> (1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of the right to a jury trial; and (7) prejudice to the involuntarily removed defendants.

*Drexel*, 130 B.R. at 407. All of these factors, however, "are merely illustrative, and the Court may remand on *any* equitable ground." *JMB Capital Partners, L.P. v. CRT Capital Gr'p LLC (In re NTL, Inc.)*, 295 B.R. 706, 719 (Bankr. S.D.N.Y. 2003) (emphasis in original); *see In re Micro Design, Inc.*, 120 B.R. 363, 366 (E.D. Pa. 1990) (noting the broad discretion given to the court when considering whether to remand a removed proceeding); *see also Geruschat v. Ernst*

*Young LLP (In re Seven Fields Dev. Corp.)*, 505 F.3d 245 (3d Cir. 2007) (specifying the term "equitable" as used in this statute "is not to be understood as distinguishing equitable from legal grounds in a traditional sense, but, instead, 'equitable' signals that which is reasonable, fair, or appropriate") (quotations and citations omitted).

The Court, applying the *Drexel* factors, finds that remand of the Adversary Proceeding is appropriate, as demonstrated below.

**(1) Efficient Administration of the Estate**

Remanding this adversary proceeding will in no way be a detriment to "the efficient administration of the bankruptcy estate." First, no such estate exists since the plan in AEG's bankruptcy case was confirmed on October 20, 2008, and a final decree closing that case was entered on January 29, 2009. *See Towne Partners v. RJZM LLC (In re RJZM LLC)*, Adv. No. 09-01264, 2009 WL 2929433, at *4 (Bankr. S.D.N.Y. July 28, 2009) ("No bankruptcy estate exists, as the Plan was confirmed and the case was closed long ago."). Second, even if the Liquidation Trust is successful in this Adversary Proceeding, AEG's already-approved liquidation plan—not this Court—would govern the allocation of any additional funds for distribution to creditors. Accordingly, there is "no possible impact on the administration of the bankruptcy estate," and thus no justification for keeping the case in the Bankruptcy Court. *In re RJZM LLC*, 2009 WL 2929433 at *4.

**(2) Predominance of State Law Issues**

The claims in this Adversary Proceeding all center on state law; no cognizable bankruptcy issues remain. The claims against the Ahava Entities and Toobro Entities are based on allegations of breach of contract, breach of settlement, successor liability and alter ego liability, all of which are generic state-law causes of actions. Similarly, the claims against Signature regarding the proceeds of the Secured Sale are based on state law conversion and

9

unjust enrichment causes of action that will be determined pursuant to Article 9 of New York's UCC ("Article 9"). None of these claims implicate any federal or bankruptcy law issues.

Signature argues that resolution of its dispute with the Liquidation Trust may require interpretation of this Court's Lift Stay Order, and this Court is in the best position to interpret its own orders. In particular, Signature contends the Court must determine: (1) whether the Order requires all proceeds of the Secured Sale, or only the proceeds from Lewis Dairy's assets, to be kept in escrow; and (2) whether pursuant to the Order AEG's security interests attach to the proceeds of the Secured Sale or remain with the Secured Sale Assets. While resolution of this case may require interpretation of the Lift Stay Order, it "does not mean that State law is superseded." *In re NTL, Inc.*, 295 B.R. 706, 717 (Bankr. S.D.N.Y. 2003). Indeed, interpretation of the Lift Stay Order will be limited to its effect on conflicting security interests between Signature and AEG, which is primarily an issue of state UCC law. *See Longacre Master Fund, Ltd v. Telecheck Servs., Inc., (In re Casual Male Corp.)*, 317 B.R. 472, 479 (Bankr. S.D.N.Y. 2004) (remanding where the case "would require interpretation" of a bankruptcy court order, but where "the essence of the controversy" was nevertheless an issue of state law); *NTL*, 295 B.R. at 717 ("[T]he real issues today do not involve the interpretation of the order, but rather its effect on the rights of parties to private contracts."); *Bayside Fuel Oil Corp. v. Savino (In re Savino Oil & Heating Co.)*, No. CV–91–0038, 1992 WL 118801, at *4 (E.D.N.Y. May 21, 1992) ("In this context, the prior orders of the bankruptcy court are relevant principally as they aid in the resolution of various state law issues, and this Court has every confidence that . . . the state court will give the [prior] Order the full weight due it.") (internal quotations omitted).

The predominance of state law issues therefore weighs heavily in favor of remand.

**(3) Difficulty or Unsettled Nature of State Law Issues**

This case presents unsettled questions of law regarding Article 9, specifically, the effect of an allegedly unauthorized termination statement on a subsequently acquired security interest. In the Motion to Dismiss Decision, the State Court found that the allegedly unauthorized Termination Statement did not affect AEG's security interest. In addressing this issue, the State court identified a recent Southern District of New York case that held otherwise. In that case, *Roswell Capital Partners LLC v. Alternative Construction Technologies*, the court, analyzing Florida's UCC, determined that the UCC "places the burden of monitoring for potentially erroneous UCC–3 filings on existing creditors, who are aware of the true state of affairs as to their security interests, rather than potential creditors who will not be in a position [to] know whether a termination statement was authorized or not." 08-CIV-10647, 2010 WL 3452378, at *7 (S.D.N.Y. Sept. 1, 2010) *aff'd sub nom. Roswell Capital Partners LLC. v. Beshara*, 10-4037-CV, 2011 WL 3849613 (2d. Cir. Sept. 1, 2011). The State Court, on the other hand, found the district court's analysis to be undermined by both the sample form for termination statements promoted by the UCC as well as the "notice filing system" adopted by the UCC. *See* Motion to Dismiss Decision, pp. 16-17 n.1. This unsettled question of law, as well as the competing policy considerations underlying the same, therefore weigh in favor of remand to the State Court, which, "by greater knowledge of what [it wants] to accomplish, and a greater interest in regulating the area in question," provides "the best forum for determining issues of this nature." *In re Lyondell Chemical Co.*, 402 B.R. 596, 614 (Bankr. S.D.N.Y. 2009).

**(4) Comity**

"Comity focuses on the state's interest in developing its law and applying its law to its citizens." *In re Casual Male Corp.*, 317 B.R. at 480 (quoting *ML Media Partners, LP v.*

*Century/ML Cable Venture (In re Adelphia Commc'ns Corp.)*, 285 B.R. 127, 146 (Bankr. S.D.N.Y. 2002)) (internal quotations omitted). Here, as discussed above, New York has a strong interest in developing unsettled Article 9 law in accordance with its policy considerations. These comity concerns are buttressed by the parties' strong connection to New York. AEG was a New York corporation until its dissolution pursuant to the Confirmation Order. Compl., ¶ 9. Signature is a publicly-traded bank organized under the laws of the state of New York. Compl., ¶ 22. All of the remaining Defendants—other than Ahava of California, LLC, which is a California limited liability company—are either New York limited liability companies or New York corporations, and every Defendant conducted or continues to conduct business in New York. Compl., ¶¶ 10-22. Accordingly, this Adversary Proceeding has a strong nexus with New York resulting in New York's having an interest in its adjudication of the matter. This factor therefore points heavily towards remand.

### (5) Relatedness or Remoteness to the Main Bankruptcy Case

The fact that the bankruptcy case was closed weighs in favor of remand based on the fifth *Drexel* factor. The state law claims at issue bare very little "relatedness" to a now-completed Chapter 11 case. *In re RJZM LLC*, 2009 WL 2929433 at *4. Disposition of this case may have a significant impact on the amount of money available for creditors, but its effect "on the proceedings in the main bankruptcy case will be remote." *Tougher Industries, Inc. v. Dormitory Authority of New York (In re Tougher Indus., Inc.)*, No. 07-90017, 2009 WL 2872842, at * 5 (Bankr. N.D.N.Y. Feb.17, 2009). While this action is sufficiently related to AEG's bankruptcy cases for this Court to retain subject matter jurisdiction, such an attenuated relationship to the bankruptcy cases does not merit this Court's retention of the proceedings at issue. *Drexel*, 130 B.R. at 407-08.

Signature unsuccessfully argues that this Court should adjudicate this proceeding because the Lift Stay Order and the Final Decree specifically retained jurisdiction to determine the parties' rights in the proceeds of the Sale. This argument would be stronger had the Order or the Decree retained exclusive jurisdiction over the matter. But neither of them did. While this Court's retention of non-exclusive jurisdiction *allows* the Court to adjudicate this proceeding even after the close of AEG's bankruptcy case, equitable considerations can still compel this Court to remand the action. *See, e.g.*, *In re V. Savino Oil & Heating Co., Inc.*, 1992 WL 118801, at \*4 (remanding action to state court and noting "nothing in the Consent Order or other bankruptcy court orders requires exclusive federal jurisdiction").

### **(6) Prejudice to Involuntarily Removed Defendants**

While no other party has argued that it will be prejudiced by this Court's retention of the Adversary Proceeding, Signature alone claims that it will face prejudice in the State Court if the case is remanded. But the State Court ordered Signature to be joined as a necessary party. This reflects the State Court's regard for the best interests of Signature, certainly not a prejudice against it.

Signature further argues that it will be prejudiced by certain of the State Court's findings of fact in the Motion to Dismiss Decision. But such findings were made pursuant only to the Toobro Defendant's motion to dismiss, and in that decision the State Court did not purport to determine the status of Signature's security interest, instead it merely found that the defendants failed to demonstrate that Signature's interest was superior to AEG's. *See* Motion to Dismiss Decision, p. 14 ("Defendants fail to show that AEG's security interests in Ahava Dairy's and/or Lewis' assets were subordinate to those of Signature Bank."). Given the above, this Court is not willing to preclude its decision to remand this case based on Signature's perception of prejudice.

If Signature is unhappy with a speculative and unknown future decision of the State Court and feels it is a result of prejudice, Signature is free to appeal that decision.

Finally, Signature argues that if the Court remands the proceeding due to the State Court's familiarity with the underlying issues, then the Liquidation Trust would be rewarded for initiating an "*ex parte*"[7] proceeding against Signature in State Court since that proceeding would effectively prevent Signature from being heard in the forum of its choice. Signature also brings up the parade of horribles, suggesting that remand here would incentivize future parties' initiating proceedings like the one initiated by the Liquidation Trust. But both of these arguments by Signature overlook the fact that the State Court's familiarity is but one small factor informing this Court's decision to remand, which is based on many other glaring reasons to do so. Accordingly, it is not the case that the Liquidation Trust is being rewarded for filing the State Court action without initially joining Signature; this Court is responding to more than that one fact. And were a future hypothetical litigant to initiate an "*ex parte*" [sic] proceeding in the absence of these additional facts, there is no guarantee that proceeding would have the same persuasive effect it does here. In addition, the Court is remanding to the jurisdiction with the greater interest.

At bottom, it is clear that this Court should remand the Adversary Proceeding. For more than a year, the State Court has entertained and adjudicated several matters in the State Court Action, including motions to dismiss. Remanding, therefore, promotes comity and judicial economy and efficiency especially since there are no cognizable bankruptcy issues remaining— those that remain center on state law.

---

[7] Signature engages in a curious labeling distortion of the nature of the State Court proceeding transparently instituted against twelve defendants based on a variety of legal theories, a proceeding that was certainly not conducted "for the benefit of one party only, and without notice to, or argument by, any person adversely interested." BLACK'S LAW DICTIONARY 616 (8th ed. 2004) (defining "*ex parte*").

## CONCLUSION

For the reasons set forth above, this Court finds, in its discretion, that the Adversary Proceeding should be remanded to the state court pursuant to 28 U.S.C. section 1452(b). The Clerk of the Court is directed to effect the remand and transfer to State Court.

**IT IS SO ORDERED.**

Dated: New York, New York              /s/ Burton R. Lifland
       November 29, 2011                      United States Bankruptcy Judge